OPINION
{¶ 1} Appellant, Erin Gump, was found guilty of illegally manufacturing an explosive in violation of R.C. § 2923.17(B) and the unlawful possession of a dangerous ordnance in violation of R.C. §2923.17(A) following his April 7, 2005, jury trial in the Jefferson County Court of Common Pleas. Appellant then pleaded guilty to the remaining count against him, possession of a weapon while under a disability in violation of R.C. § 2923.13(A)(3). He was sentenced to seven years in prison for the illegal manufacturing offense concurrent to one year in prison for the possession offense. He was also sentenced to two years in prison for possession of a weapon while under a disability to be served consecutively with the sentences, for a total of nine years in prison.
 {¶ 2} Appellant timely filed his notice of appeal. In his sole argument he challenges the sufficiency of the evidence supporting his conviction for the illegal manufacture of an explosive. Specifically, he claims that the state failed to establish with sufficient evidence that he manufactured an "explosive" as that term is defined. Instead, he argues that he simply created a firework. He maintains that there was no evidence that the device he created was an explosive nor was evidence presented establishing that the materials he employed were subject to the rules and regulations of the fire marshal.
 {¶ 3} Appellant states that since this device was found under his marital bed, it is unreasonable to believe that it was an explosive. Finally, he argues that the state failed to prove that the blast and sulfur smell from the detonation of his device was not caused by the device that the police used in their countercharge. For the following reasons, however, Appellant's arguments on appeal lack merit and are overruled.
 {¶ 4} For Appellant's sole assignment of error he asserts:
 {¶ 5} "THE TRIAL COURT COMMITTED REVERSIBLE ERROR BY ACCEPTING A JURY VERDICT OF GUILTY TO ILLEGAL MANUFACTURE OF AN EXPLOSIVE WHEN SAID VERDICT WAS REACHED ON INSUFFICIENT EVIDENCE."
 {¶ 6} A judgment will not be reversed based on insufficient evidence if it is supported by competent, credible evidence that goes to all the essential elements of the case. Cohen v. Lamko (1984),10 Ohio St.3d 167, 462 N.E.2d 407.
 {¶ 7} In State v. Thompkins (1997), 78 Ohio St.3d 380, 678 N.E.2d 541, the Ohio Supreme Court explained that sufficiency of the evidence is a term of art that determines, "'whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" Id. at 386, quoting Black's Law Dictionary (6 Ed. 1990) 1433. A decision as to whether the state's evidence is sufficient to sustain a jury verdict is a "test of adequacy" and is a question of law. Id.
 {¶ 8} R.C. § 2923.17(B) which addresses the illegal manufacture or processing of explosives states:
 {¶ 9} "No person shall manufacture or process an explosive at any location in this state unless the person first has been issued a license, certificate of registration, or permit to do so from a fire official of a political subdivision of this state or from the office of the fire marshal."
 {¶ 10} It is undisputed in the instant matter that Appellant did not have a license or permit, authorizing him to manufacture explosives pursuant to the statute. The sole question on appeal is whether Appellant manufactured an "explosive" as that term is defined.
 {¶ 11} R.C. § 2923.11(M) defines explosive as,
 {¶ 12} "any chemical compound, mixture, or device, the primary or common purpose of which is to function by explosion. `Explosive' includes all materials that have been classified as class A, class B, or class C explosives by the United States department of transportation in its regulations and includes, but is not limited to, dynamite, black powder, pellet powders, initiating explosives, blasting caps, electric blasting caps, safety fuses, fuse igniters, squibs, cordeau detonant fuses, instantaneous fuses, and igniter cords and igniters. `Explosive' does not include `fireworks,' as defined in section 3743.01 of the Revised Code, or any explosive that is not subject to regulation under the rules of the fire marshal adopted pursuant to section 3737.82 of the Revised Code."
 {¶ 13} R.C. § 2923.11(H) defines an explosive device as,
 {¶ 14} "any device designed or specially adapted to cause physical harm to persons or property by means of an explosion, and consisting of an explosive substance or agency and a means to detonate it. `Explosive device' includes without limitation any bomb, any explosive demolition device, any blasting cap or detonator containing an explosive charge, and any pressure vessel that has been knowingly tampered with or arranged so as to explode."
 {¶ 15} Appellant first argues that his device was simply a firework.
 {¶ 16} "'Fireworks' means any composition or device prepared for the purpose of producing a visible or an audible effect by combustion, deflagration, or detonation, except ordinary matches and except as provided in section 3743.80 of the Revised Code." R.C. § 3743.01(F).
 {¶ 17} A review of the jury instructions reveals that the definition of a firework was not before the jury nor was this definition requested by Appellant.
 {¶ 18} The record reflects that on January 7, 2005, several City of Steubenville police officers along with Special Agent Doug Filippi of Ohio's Bureau of Criminal Identification and Investigation searched Appellant's residence pursuant to a search warrant. Appellant evidently knew Filippi, and Appellant offered to assist the officers. Before the police found the device in issue, Appellant advised Filippi that, "there was a — a thing that looked like a bomb in his residence but it wasn't — it wasn't real." (Tr., pp. 111-114.)
 {¶ 19} Filippi thereafter found the device in Appellant's bedroom in a drawer under his bed. It was a blue tube wrapped in black tape. Upon inquiry by the police, Appellant told them that it was fake and that it would not explode. (Tr., pp. 119-120.)
 {¶ 20} Steubenville police officer Jonathan Sowers testified that he was with Filippi when he found the "bomb" and that Filippi handed it to him. State's Exhibits 16 are photographs depicting the device. Sowers explained that one of the officers cut back the tape on the device, which revealed, "large long nails were attached to the cylinder on the inside of it by the tape. * * * [T]he nails were hidden until you peeled it [the tape] back." Appellant advised the officers that he made the device to "scare people." (Tr., pp. 126-129.)
 {¶ 21} However, after the officers discovered the nails inside the device, Appellant himself advised them that it contained a, "firework type powder in it and ball bearings and that he had sealed the end off with wax[.]" Appellant described the powder as, "silverish powder used to propel fireworks[.]" Appellant also advised the officers that he purchased the components at a flea market and he showed them a box of additional cylinders, ball bearings, and a roll of fuse. Sowers explained that the officers moved the device since it did not appear as though it would explode unless lighted. (Tr., pp. 130-131, 133.)
 {¶ 22} The officers later transported the device and Appellant to the police station and contacted the Youngstown bomb squad for assistance. The bomb squad later detonated the device. Sowers testified that the bomb squad dug a hole in the ground at a local park that was closed at the time and placed the device inside. It was dark outside and it was raining. Following the detonation there was a bigger hole and the nails were scattered and, "there was mud blown everywhere, I mean literally everywhere." Mud even landed on the roof of a shelter house in the park. (Tr., pp. 134-135.)
 {¶ 23} Detective Jason Hanlin also described the detonation of the device at trial. He stated,
 {¶ 24} "I originally watched them [the Youngstown bomb squad] dig a hole in the ground to place the bomb into which may have been * * * 18 inches in diameter. They had some problems with some rocks in the ground. So, it wasn't — it was maybe 12, 14 inches deep. I'm not sure. When I returned back after the explosion, the hole in the ground increased dramatically. It was much longer, larger. There was dirt on the black pavement scattered everywhere. There was a restroom that was probably 50 yards away from where they deployed the device and there was mud from the explosion splattered on that restroom." (Tr., pp. 94-95.)
 {¶ 25} Hanlin described smelling sulfur after the detonation. He said that the smell was consistent with that of black powder used in black powder rifles. Hanlin said that the officers attempted to videotape the explosion, but the battery for the camera was dead. (Tr., pp. 94, 103, 106.)
 {¶ 26} Hanlin also heard Appellant's interview with the bomb squad during which Appellant told them that the device contained, "a metallic silver powder * * * [that he described as] more of a bottle rocket type fuel, more than a fire — firecracker type explosive. He [Appellant] stated the item would shoot into the air rather than explode like a firecracker." (Tr., p. 91.)
 {¶ 27} Detective Sergeant Doug Bobovnyik of the Youngstown Police Department ("YPD") also testified for the state. He was contacted to assist the Steubenville Police Department regarding Appellant's device on January 7, 2005. Bobovnyik is a supervisor and has been on the YPD's bomb squad since 1994. He described his bomb squad training and the fact that he is recertified every three years. (Tr., pp. 142-143.)
 {¶ 28} On the evening in question, Bobovnyik briefly interviewed Appellant, who advised Bobovnyik that he had, "put a gray substance inside [the device]. It was the color of a lead pencil. He said it was a powder that he had poured inside and sealed off the end cap with I think it was wax." (Tr., pp. 144-145.) After talking with Appellant, Bobovnyik determined that he was dealing with, "gray smokeless powder." (Tr., p. 146.)
 {¶ 29} Bobovnyik was then asked to explain to the jury about the characteristics of gray smokeless powder. He stated,
 {¶ 30} "[t]here's a — there's a black powder and there's smokeless powder. They're both considered to be propellants. They're used exclusively in ammunitions. Smokeless powder is — it burns. It's not an explosive but it burns and smokeless powder burns at a faster rate than black powder.
 {¶ 31} "Q Okay. What happens to that when you put it inside of something?
 {¶ 32} "A Okay. When you put a black powder or a smokeless powder into a confined area, it will still burn but it burns at such a high rate that it expels gases, heat and pressure. So, when it's burning and — at a very high rate, it expands the container that it is in and as that tainer — container expands more and more, it will burst and it — it causes a detonation. So, then it does actually become a highexplosive when it's in a confined area like that.
 {¶ 33} "* * *
 {¶ 34} "A When it burns in a confined area, it becomes an explosive, ahigh explosive." (Emphasis added.) (Tr., pp. 146-147.)
 {¶ 35} Bobovnyik then described the procedure used to countercharge Appellant's device. He explained,
 {¶ 36} "[T]he way it [the device] was set up, it was initially set up [by Appellant] to be lit with a fuse but we didn't want to do that because we didn't know how this fuse was going to burn. * * * So, we — we countercharged it with what we call a cast booster and some det cord. We put another explosive next to it to try to open this container and make the black powder safe to handle.
 {¶ 37} "[He further stated that they used a high-order detonation, which] is when an explosive detonates at the expected velocity that it was designed to do.
 {¶ 38} "[The officers used] a cast booster, which was TNT-based explosive. It was equivalent to maybe a half a [sic] stick of dynamite[.]" (Tr., pp. 147-148.)
 {¶ 39} Following the explosion, Bobovnyik also described, "a strong smell of sulphur, which is consistent with black powder or smokeless powder." (Tr., pp. 148149.) Bobovnyik was then asked if he could differentiate between the detonation of Appellant's device and the countercharge he employed. In response, he explained that the TNT-based countercharge was, "not going to have that big of an effect. However, when this [Appellant's device] was countercharged, it was a pretty large explosion[.]" (Tr., p. 148.) Bobovnyik then agreed with the state's questioning and stated that he had no doubt in his mind that Appellant's device exploded and that Appellant had indeed built a bomb. (Tr., p. 149.)
 {¶ 40} On cross-examination, Bobovnyik admitted that he never actually saw any smokeless powder on Appellant's device before or after its detonation. However, he explained that after its detonation, dirt, rocks, and nails were blown into the air and the hole was about, "3 feet in diameter after the charge went off." (Tr., pp. 150152.)
 {¶ 41} On re-direct, Bobovnyik reiterated that the explosion, "was much stronger than just one cast booster that we had used * * * and there was a strong smell of sulphur, which is a — a base in the smokeless powder or propellants." (Tr., p. 155.) He agreed that this sulfur smell would not have been present with just his countercharge, and that that odor had to have come from Appellant's device. (Tr., pp. 155-156.)
 {¶ 42} Finally on re-cross-examination Bobovnyik also agreed that this sulfur smell could be present in the use of a firework. (Tr., p. 156.)
 {¶ 43} After both sides rested their case, the judge advised both counsel to review the jury instructions. There are no objections to these on the record. (Tr., p. 167.) Appellant did not ask the court to include the statutory definition of firework in the jury instructions.
 {¶ 44} Notwithstanding, Appellant directs this Court's attention toState v. Dommer, 162 Ohio App.3d 404, 2005-Ohio-4073, 833 N.E.2d 796, in support of his argument that his device was simply a firework. TheDommer court reversed the defendant's conviction for building a "bottle bomb" constructed of aluminum foil and toilet bowl cleaner.Dommer held that the device was not an explosive, but was simply a firework. It noted that all the materials used in constructing the bottle bomb were purchased at a grocery store. Also, none of the chemicals or materials employed were subject to the rules and regulations of the fire marshal nor were they classified as an explosive by the United States Department of Justice, Bureau of Alcohol, Tobacco, Firearms and Explosives. Id. at ¶ 10-12.
 {¶ 45} Unlike Dommer, however, the facts in the instant matter support Appellant's violation of R.C. § 2923.17(B). There is ample testimony establishing that Appellant's device contained black powder or gray smokeless powder and that his device did indeed explode. The statutory definition of explosive in R.C. § 2923.11(M) includes "black powder." Further, the explosion was described as greater than the TNT-based countercharge that the bomb squad used to detonate it. Although there was actually none of the powder propellant recovered from the device or at the scene of the detonation, there was no doubt in bomb squad supervisor Detective Sergeant Bobovnyik's mind that Appellant's device caused the explosion. In Bobovnyik's testimony he concluded, based on what Appellant himself told him, that the device contained an explosive powder.
 {¶ 46} While there was no direct testimony that gray smokeless powder alone is an A, B, or C class explosive, the statutory definition of an explosive is not so limited. R.C. § 2923.11(M) includes in its definition, "any * * * device, the primary or common purpose of which is to function by explosion."
 {¶ 47} Additionally, Appellant's device propelled long nails and ball bearings on detonation. Thus, unlike the definition of a firework, it was not designed to produce only an audible or visual effect. R.C. § 3743.01(F). The record reveals that it was apparently designed to cause physical harm to persons or property consistent with the definition of an explosive device. R.C. § 2923.11(H).
 {¶ 48} Finally, we note that Appellant's insistence that he kept this device under his marital bed demonstrates nothing more than a lack of common sense.
 {¶ 49} Based on the foregoing, Appellant's sole assignment of error lacks merit and is overruled. Appellant's conviction is hereby affirmed in full.
Donofrio, P.J., concurs.
Vukovich, J., concurs.